**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. ROBERT LOWINGER,<br><br>              Plaintiff,<br><br>   v.<br><br>ROCKET ONE CAPITAL, LLC, MICHAEL SHVARTSMAN, BRUCE GARELIK, and DIGITAL WORLD ACQUISITION CORP.,<br><br>              Defendants. | Civil Action No. 1:23-cv-9243<br><br>**COMPLAINT** |

Plaintiff, by his attorneys, based upon knowledge with respect to and upon information and belief with respect to all other matters, alleges as follows:

## INTRODUCTION

1.    This case arises out of short-swing trading in the securities of Digital World Acquisition Corp. ("DWAC" or the "Company") by persons who, either directly or through a deputy, served as a director of the Company or otherwise had a pecuniary interest in those transactions within the meaning of governing Securities and Exchange Commission ("SEC") rules. Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78p(b), requires that those Defendant disgorge their insider trading profits to the Company without regard to whether they actually traded or intended to trade on inside information.

## PARTIES

2.    Plaintiff Robert Lowinger is a shareholder of DWAC.

3.    Defendant Digital World Acquisition Corp. maintains its principal executive offices in Miami, Florida and has securities registered with the SEC pursuant to Section 12(b) of the Exchange Act, 15 U.S.C. §78*l*(b). The Company is a necessary party because Plaintiff is bringing this action to obtain a recovery for its benefit.

4.      Defendant Rocket One Capital, LLC ("Rocket One") is a Florida limited liability company having its principal office located in Miami, Florida.  Rocket One describes itself as providing venture capital and private equity through hands-on investments.

5.      Michael Shvartsman ("Shvartsman") is a resident of Sunny Isles Beach, Florida. Shvartsman owns and controls Rocket One while also serving as its chief executive officer ("CEO").

6.      Defendant Bruce Garelik was a resident of Fort Lauderdale, Florida and, at the times relevant to this action, also served as Rocket One's chief investment officer and a member of the Company's board of directors.

## JURISDICITION AND VENUE

7.      Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa.  Venue is properly laid in this District because each of the Defendants was either a resident of, or maintained its principal place of business in this District, at the time of the conduct alleged.

## SUBSTANTIVE ALLEGATIONS

8.      DWAC is a special purpose acquisition company ("SPAC") which at the time it was formed had no underlying business and was created to raise money from the investing public for the purpose of acquiring another operating company.

9.      In June of 2021, Shvartsman introduced Garelick to Patrick Orlando ("Orlando"), DWAC's Chairman and CEO, just before Shvartsman and Rocket One agreed to make a Founders Class investment in DWAC.

10.      In July 2021, Garelick was nominated to DWAC's board of directors, a position which gave him access to material non-public information ("MNPI").

11.     In a June 2021 email, Garelick wrote that Shvartsman and Rocket One intended to exercise their Founders Class shares' redemption rights if DWAC did not pursue a merger with Trump Media & Technology Group Corp. ("Trump Media" or "TMTG").

12.     On June 24, 2021, as part of a text message, Garelick characterized his potential seat on the Board as "a front row seat babysitting job" that was "well worth it for an unconventional investment like this."

13.     On September 1, 2021, Garelick texted Orlando: "[I]t's Bruce Garelick at Rocket One. Congrats on the IPO date becoming official!! Let's briefly catch up when you get a minute." Orlando and Garelick spoke for about 6 minutes the next morning and, shortly after that call concluded, Garelick texted Shvartsman and wrote: "I spoke with [Individual A]. Not urgent. We can catch up later."

14.     On September 2, 2021, Garelick formally joined DWAC's board of directors.

15.     On September 3, 2021, DWAC commenced an initial public offering (the "IPO") without disclosing the identity of the operating company DWAC intended to acquire.  In the IPO, the Company sold 28,750,000 Units at $10.00 apiece with each Unit consisting of one share of Class A common stock (the "Common Stock") and one-half of one warrant exercisable for one share of Common Stock at an exercise price of $11.50.

16.     Between September 3 and 23, 2021, Garelick purchased 5,320 Units.

17.     On September 20, 2021, Garelick sent Shvartsman a message stating "FYI. I have a DWAC BOD meeting tomorrow at 12:30. I recommend starting to buy more DWACU stock[.]"

18.     On September 21, 2021, at a meeting Garelick attended, the DWAC's board of directors discussed several potential targets including TMTG and voted to negotiate a letter of intent with TMTG.  Orlando sent a message to Garelick and the Board later that afternoon stating

he "planned to start the process of allowing people to disaggregate their units[.]" Less than a half hour after responding and approving both actions Garelick called Shvartsman and the two spoke for almost 6 minutes.

19.    On September 22, 2021, DWAC's Board, including Garelick, approved the signing of a letter of intent outlining a prospective merger between the Company and TMTG which constituted MNPI.

20.    On September 22, 2021, DWAC's board of directors approved signing a letter of intent via a WhatsApp thread, after which Orlando met with TMTG and signed an exclusive letter of intent between DWAC and TMTG. Garelick, who was "enthusiastically in favor to advance with TMG under the stated terms" according to his text message, spoke on the phone with Shvartsman for more than an hour the next morning.

21.    On September 29, 2021, Garelick learned that the deal with TMTG was moving forward towards closing. That same afternoon, Garelick and Michael Shvartsman exchanged three phone calls with the last call lasting almost 8 minutes.

22.    On September 30, 2021, DWAC warrants started trading separately on NASDAQ, meaning investors could get exposure to DWAC securities at a much cheaper price with a far greater potential upside. On that evening after the close of the markets, Garelick spoke with Shvartsman for about 6 minutes. After that call, Garelick sent a message to Shvartsman stating: "Mike - Note, DWACW (warrants) started trading today" and informing Swartzman of Rocket One's contact to initiate a trade.

23.    On October 1, 2021, Shvartsman, through Rocket One, contacted the person identified by Garelick and placed an order to purchase 250,000 warrants of which 227,915 were filled by the end of the day.

24.     On October 4-5, 2021, Shvartsman, through Rocket One, again contacted the person identified by Garelick and purchased 2,000,000 warrants.

25.     On October 15, 2021, a junior employee at Rocket wrote "DWAC stock** BUY 10 unit gives you warrant and full share can't lose money. . . . ***bought 2m warrants b/c target is trump media***."  (emphasis added).

26.     On October 17, Garelick received a copy of the draft merger agreement for DWAC and TMTG. That evening, Garelick and Shvartsman spoke for about 31 minutes.

27.     On October 20, 2021, the Company announced that it had entered into a merger agreement with Trump Media.

28.     On October 21, 2021 and October 22, 2021, Shvartsman, through Rocket One, sold all the DWAC securities he owned realizing net profits of $18,269,042.98.

29.     On October 21, 2021, Garelick sold all DWAC Securities he owned realizing net profits of at least $49,701.95.

30.     On October 21, 2021, after the markets closed, Garelick texted a female friend writing: "Big day today – my Trump SPAC traded up 400% today! We made $20 mil on it."

31.     Also on October 21, 2021, Garelick texted another person that he "[w]ish[ed he] wasn't on the BOD" which "[s]everly restricted what [he] could do" personally but he "[t]ook one for the team."

### CLAIM FOR RELIEF
### (Against All Defendants)

32.     Plaintiff repeats and realleges every allegation above as if fully set forth herein.

33.     Garelick was a director of the Company.

34.     Rocket One was a director of DWAC by virtue of having Garelick serve as its deputy on the Board.

35.     Garelick and Rocket One each sold DWAC securities within six months of the date of their purchases.

36.     Matching the sales price with the purchase price results in a profit which Garelick and Rocket One are each individually required to disgorge to the Company.

37.     Shvartsman as the owner of Rocket One has a pecuniary interest in the short-swing profits earned by Rocket One within the meaning of SEC Rule 16a-1(a)(2), 17 C.F.R. §240.16a-1(a)(2) and is, therefore, also individually liable to disgorge the short-swing profits earned by Rocket One.

## ALLEGATIONS AS TO DEMAND

38.     On August 21, 2023, Plaintiff made a demand (the "Demand") on the Board to pursue the claims asserted in this Complaint.

39.     The Board has not responded to the Demand despite sixty days having passed.

## BASIS FOR INFORMATION AND BELIEF

40.     Plaintiff's information and belief is based upon a review of the Company's filings made with the SEC and a review of publicly available information including the allegations made in *Securities and Exchange Commission v. Garelick, et al.*, 23-CV-5567 (S.D.N.Y.), and *United States of America v. Shvartsman, et al.*, 23-CRIM-307 (S.D.N.Y.)

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for the benefit of the Company in an amount to be determined at trial, plus pre-judgment interest, post-judgment interest, and such other and further relief as this Court may deem just and proper.

Dated: October 20, 2023
By:  /s/  Jeffrey S. Abraham
Jeffrey S. Abraham
Michael J. Klein
**ABRAHAM, FRUCHTER & TWERSKY, LLP**
450 7th Avenue, 38th Floor
New York, New York 10123
Telephone: (212) 279-5050
Email: jabraham@aftlaw.com
        mklein@aftlaw.com